<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHEET METAL WORKERS NATIONAL HEALTH FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMGEN INC. and AMGEN USA, INC.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 07-5295 (SRC)<br><br>**OPINION** |

<u>**CHESLER**</u>, District Judge

      This matter comes before the Court upon the motion to dismiss filed by Defendants Amgen Inc. and Amgen USA, Inc. [docket item # 27] (The Defendants will be referred to collectively as "Amgen".)  Plaintiff Sheet Metal Workers National Health Fund ("Plaintiff" or "SMW") opposes the motion.  The Court has considered the papers submitted by the parties, and pursuant to Federal Rule of Civil Procedure 78, rules on the motion without oral argument.  For the reasons discussed below, the Court grants Amgen's motion in part, dismissing SMW's claim for injunctive relief under the Clayton Act and for a declaratory judgment without prejudice.  Certain of the state antitrust claims will be also dismissed without prejudice for failure to state a claim upon which relief may be granted.  The motion to dismiss the remainder of the claims, pled under various state laws will be denied as premature.

## I.   RELEVANT FACTS

This putative class action involves an alleged tying arrangement and pricing scheme

implemented by Amgen allegedly in violation of federal and state antitrust law.  The Court has

subject matter jurisdiction over this case pursuant to the diversity jurisdiction requirements of the

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A).  The lawsuit also supports federal

question jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 15(a) by virtue of

Plaintiff's claim for injunctive relief under the Clayton Act, 15 U.S.C. § 26, for alleged violations

of the Sherman Act, 15 U.S.C. §§ 1-2.  The following summary of the facts is based on the

Complaint, and the Court assumes their truth for purposes of this motion.

This lawsuit involves Amgen's sale to oncology clinics of two kinds of drugs - red blood

cell growth factor ("RBCGF") and white blood cell growth factor ("WBCGF").[1]  Amgen

manufactures and sells a RBCGF drug known as Aranesp, which is approved by the Food and

Drug Administration ("FDA") to treat chemotherapy-induced anemia, a red blood cell deficiency.

Aranesp competes with only one other RBCGF drug for chemotherapy-induced anemia.  The

competitor RBCGF drug is manufactured by Ortho Biotech Products, L.P. ("Ortho") and sold

under the brand name Procrit.  Amgen also manufactures and sells WBCGF drugs, branded as

Neupogen and Neulasta, which command a 98% market share of WBCGF drug sales to oncology

clinics.[2]  Because many cancer patients undergoing chemotherapy develop anemia and/or the

---

[1] RBCGF drugs treat severe anemia, which is most commonly seen in patients (1) with
chronic kidney disease pre-dialysis or while undergoing dialysis, (2) undergoing chemotherapy,
or (3) undergoing zidovudine treatment for HIV.  WBCGF drugs treat neutropenia, a white blood
cell deficiency and common side-effect of chemotherapy.

[2] The only other WBCGF drug sold is Leukine, distributed by Berlex Laboratories.  Ortho
does not sell a WBCGF drug.

white blood cell deficiency neutropenia, most oncology clinics need to purchase both RBCGF drugs and WBCGF drugs.

SMW alleges that Amgen has sought to eliminate competition for sales of RBCGF drugs to oncology clinics by implementing a pricing scheme that bundles sales of Aranesp, Amgen's RBCGF drug, with sales of its WBCGF drugs, on which Amgen has an undisputed monopoly, in a way that penalizes oncology clinics for purchasing the competing RBCGF drug Procrit. The bundled pricing scheme, implemented in spring 2004, offered substantial rebates to oncology clinics if a clinic met certain dollar volume requirements in their combined purchases of Amgen's RBCGF and WBCGF drugs. Amgen offered these rebates in its Amgen Portfolio Contract ("APC"). Under the APC pricing, each clinic was given dollar volume usage targets that, once reached, allowed the clinic to earn a specified level of rebate. The greater the purchases of Amgen products, the greater the rebate earned.

The Complaint does not allege that Amgen will sell its WBCGF products on the condition that the oncology clinics also buy its RBCGF product Aranesp. The tying arrangement described by the Complaint is based on the discounts a clinic would receive if certain volumes of the products were purchased in a bundle, as described above. SMW claims that Amgen's pricing scheme structured the bundled discounts in a way that forced the purchase of Aranesp. One, Amgen capped the amount of WBCGF drugs that could be considered for purposes of reaching the dollar volume targets or higher rebate levels. Two, Amgen required minimum dollar volume requirements for Aranesp in order to earn the rebates. In the latest iteration of the pricing scheme described in the Complaint, namely the October 2005 APC, clinics were required to purchase at

3

least 65% of their RBCGF volume from Amgen to gain access to the lowest rebate level.[3]

Amgen's increase of Aranesp purchase requirements to reach the same rebate levels previously

offered for lower purchase volumes and decrease of rebates offered on the WBCGF drug

Neulasta forced oncology clinics to purchase all or substantially all of their RBCGF drugs from

Amgen.  The coercive effect of the pricing scheme was magnified by the economics of treating

Medicare patients, who form approximately 40% of the patient population in oncology clinics.

Because the federal government reimburses clinics for drugs they purchase and administer to

Medicare patients under a formula based on a drug's average selling price, a clinic that does not

avail itself of all rebates may pay the manufacturer more for a drug than it will receive in

reimbursement from the government.  Thus, foregoing the bundled discount - which requires the

purchase of Aranesp - would result in significant losses on an oncology clinic's administration of

WBCGF drugs, which are practically speaking only available from Amgen.

    SMW charges that Amgen's pricing scheme will ultimately harm competition and raise

prices paid by end payers, such as SMW.  By coercing clinics to buy less Procrit and more

Aranesp, the APC pricing scheme has resulted in loss of market share by Ortho for RBCGF sales

to oncology clinics.  According to the Complaint, "Amgen's current efforts to leverage its

monopoly in the WBCGF drug market by penalizing oncology clinics that do not buy substantial

amounts of Aranesp, coupled with the Medicare reimbursement regime, preclude Ortho from

competing over the long-term in the RBCGF oncology clinic market."  (Compl., ¶ 53.)  The

Complaint alleges that as a result of the pricing scheme, Ortho's share of RBCGF sales to

---

[3] The threshold for Aranesp was set at dollar amounts equal to 65% of a clinic's prior RBCGF drug purchases.

oncology clinics had dropped to 34% of that market.

SMW, a multi-employer welfare fund, claims injury in this scheme as a third-party payer. SMW reimburses oncology clinics for their purchases of Aranesp used to treat the fund's insureds.  The Complaint alleges: "Amgen's pricing schemes have caused and will continue to cause anti-competitive effects in the relevant product markets. . . . Amgen's coercive bundling programs have caused public and private health care insurers, including third-party payer members of the Class, to reimburse clinics for their Aranesp purchases at rates that are higher than would have prevailed in 'head to head' competition."  (Id., ¶¶ 64-65.)

SMW alleges, in sum, that Amgen has illegally tied the purchase of its RBCGF drug Aranesp to the purchase of its WBCGF drugs by virtue of the "massive rebates" offered on the combined purchases and Amgen's monopolist market power in the sale of WBCGF drugs.  The tying arrangement "has substantially foreclosed and will continue to substantially foreclose Ortho from competing with Amgen for the sale of RBCGF drugs to oncology clinics based on the efficacy of its product and the price of its product on a stand-alone basis."  (Id., ¶ 113.)  In addition to its anti-competitive effect, Amgen's practices have increased the cost to consumers in the oncology clinic market, and according to SMW, will continue to do so unless enjoined.  (Id., ¶ 115.)

The Complaint asserts causes of action under federal and state law.  The first count pleads for injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26, premised on Amgen's alleged antitrust conduct, in violation of the Sherman Act, 15 U.S.C. §§ 1-2.[4]  It also seeks a declaratory

---

[4] The Complaint alleges two kinds of antitrust activity: (1) unlawful tying, in violation of Section 1 of the Sherman Act, and (2) monopolization of the RBCGF oncology clinic market, in violation of Section 2 of the Sherman Act.  See Compl., ¶¶ 96-100.

judgment that Amgen has violated Section 2 of the Sherman Act.  The second and third count

plead, respectively, unlawful tying in violation of California's antitrust statute, Bus. & Prof. Code

§ 16700, et seq., and violation of California's Unfair Competition Law, Bus. & Prof. Code §

17200, et seq.  (Amgen is a Delaware corporation with its principal place of business in

California.)  Finally, the fourth count asserts an alternative claim for relief.  It states that "to the

extent the Court rules that California's antitrust law does not apply nationwide," SMW seeks

damages under the antitrust statutes of 27 different states.

## II.   STANDARD OF REVIEW

Amgen's principal basis for seeking dismissal of the Complaint in its entirety is SMW's

lack of antitrust standing for failure to allege an injury in fact.  While such grounds implicate

constitutional standing principles and therefore the Court's subject matter jurisdiction, the Court

reviews the motion according to the standards applicable to Rule 12(b)(6) instead of Rule

12(b)(1).  First, the Third Circuit jurisprudence on antitrust standing has generally considered this

issue in the context of reviewing a motion to dismiss pursuant to Rule 12(b)(6).  Maio v. Aetna,

Inc., 221 F.3d 472, 482 n. 7 (3d Cir. 2000).  Second, the parties have treated the motion under the

rubric of Rule 12(b)(6), and thus there is no prejudice to SMW in the Court treating it as such.

Id.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only

if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light

most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what

the claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 127 S.Ct.

6

1955, 1965 (2007) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  In <u>Bell Atlantic v. Twombly</u>, an antitrust case alleging conspiracy in violation of the Sherman Act, the Supreme Court addressed the standard for evaluating the legal sufficiency of a pleading attacked on a Rule 12(b)(6) motion.  It held that while a complaint need not contain "detailed factual allegations," it must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 1964.[5] Federal Rule of Civil Procedure 8, which sets forth a notice pleading standard, requires that "something beyond the mere possibility of loss causation" be alleged.  <u>Id.</u> at 1966 (citing <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005)).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. <u>See</u> <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims."  <u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

---

[5] In contrast, the standard articulated in <u>Conley</u> was that the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley</u>, 355 U.S. at 45-46.  The Supreme Court abrogated the <u>Conley</u> "no set of facts" standard in <u>Bell Atlantic</u>.  <u>Bell Atlantic Corp.</u>, 127 S.Ct. at 1969.

III.   **FEDERAL CLAIMS**

A.   **Injunctive Relief Under The Clayton Act**

Amgen takes the position that the Complaint must be dismissed because it is bereft of facts alleging that SMW has suffered or is threatened with injury-in-fact. Without injury-in-fact, a plaintiff lacks statutory standing under the federal antitrust law. Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990); City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 268 (3d Cir. 1998). The Third Circuit has observed that standing, which is a threshold question in any action, takes on particular significance in context of antitrust laws "where a balance must be struck between encouraging private actions and deterring legitimate competitive activity through overly vigorous enforcement." City of Pittsburgh, 147 F.3d at 264; see also Phillip Areeda, Antitrust Violations Without Damage Recoveries, 89 Harv. L. Rev. 1127, 1127 (1976) ("the desire to encourage private enforcement and to penalize antitrust violations is no excuse for awarding damages that are non-existent"). The question of whether a plaintiff has suffered an antitrust injury must be decided first. City of Pittsburgh, 147 F.3d at 265.

In this case, SMW pleads for an injunction under the Clayton Act against Amgen's allegedly anti-competitive tying arrangement. Section 16 of the Clayton Act provides for injunctive relief against "*threatened* loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26 (emphasis added). This standard is slightly different from the statutory standard for recovering damages for an antitrust violations. While a plaintiff seeking to recover damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, must establish that it actually sustained injury-in-fact, a plaintiff seeking injunctive relief must show "a significant threat of injury" from the antitrust violation to establish standing. Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S.

8

104, 126 (1986).  The Supreme Court has held that although there are differences between Section 4 and Section 16 in the cognizable injury for which they provide a remedy, under both sections a plaintiff "must still allege an injury of the type the antitrust laws were designed to prevent."  Id. at 111.

The parties take differing views on how the law defines antitrust injury in disputes involving an allegedly illegal tying arrangement.  The matter is complicated by the fact that the law in this area is unsettled, and the issue has not been addressed by the Third Circuit Court of Appeals or by any district court within the Third Circuit.[6]  The tension lies between recognizing antitrust injury when, as a result of the tying, a buyer has paid above-market prices for the tied product (the "tied product" approach) and recognizing injury when the buyer pays more for both the tied and tying products in a bundle than their combined market value would command (the "package" approach). X Phillip E. Areeda, et al., Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 1769a, at 410 (2d ed. 2000) [hereinafter, Antitrust Law]; compare Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1054 (5th Cir. 1982), cert. denied, 459 U.S. 1105 (1983) (holding that "in a tying arrangement, 'the ordinary measure of damages would be the difference between the price actually paid for the tied product and the price at which the product could have been obtained on the open market'") (quoting Pogue v. Int'l Indus., Inc., 524 F.2d 342, 344 (6th Cir. 1975) with Kypta v. McDonald's Corp.,

_____

[6] The Eastern District of Pennsylvania followed the leading case for one of the two competing approaches - the "package" approach - in rejecting the defendant's argument that summary judgment should be granted because there was insufficient proof of antitrust injury. Pennsylvania v. Milk Indus. Mgmt. Corp., 812 F.Supp. 500, 508 (E.D. Pa. 1992) (citing Kypta v. McDonald's Corp., 671 F.2d 1282, 1285 (11th Cir.), cert. denied, 459 U.S. 857 (1982)).  In that case, however, the antitrust suit was not based on illegal tying, but rather on a conspiracy to restrain trade by submitting rigged bids for a school district's milk contracts.

671 F.2d 1282, 1285 (11th Cir.), cert. denied, 459 U.S. 857 (1982) (holding that "injury resulting

from a tie-in must be shown by establishing that payments for both the tied and tying products

exceeded their combined fair market value").  While it did not resolve the question of which

approach it would hold accurately captures antitrust injury, the Second Circuit Court of Appeals

offered a concise explanation of the two basic methods for assessing harm in tying cases:

> One method is the "tied product" approach, as referred to by the district
> court.  Under this measure, the damages awarded reflect the difference
> between the price actually paid for the tied product and the price for which
> the item could have been purchased on the open market.  The second
> approach is the so-called "package" measure, which would award damages
> only to the extent that the plaintiff overpaid for the combination of the tied
> and tying products.

In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 142-43 (2d Cir. 2001), cert.

denied, Visa U.S.A. Inc. v. Wal-Mart Stores, Inc., 536 U.S. 917 (2002) (citations omitted).

The Complaint before this Court states that SMW has been injured as follows:

> Amgen's coercive bundling programs have caused public and private
> health care insurers, including third-party payer members of the Class, to
> reimburse clinics for their Aranesp purchases at rates that are higher than
> would have prevailed in "head-to-head" competition.

(Compl., ¶ 65.)  Re-stated, SMW alleges that, because of the illegal tie, it has paid above-market

prices for the tied product, Aranesp.  The Complaint does not allege that SMW has paid more for

the package of Aranesp (the tied product) and WBCGF (the tying product) than it would have

paid for them combined at market value.  Thus, whether our jurisprudence would identify

antitrust injury according to the tied product approach or, instead, according to the package

approach is crucial to the question of SMW's standing to pursue its federal antitrust claim.

The Court has reviewed the caselaw of jurisdictions that have addressed antitrust injury in

tying cases.  Guided, in part, by the discussion on the subject in Areeda's treatise <u>Antitrust Law</u>, the Court finds the rationale of the package approach to be sound and follows those courts which have adopted that approach.[7]  Areeda explains that in most tying arrangements, a premium price on the tied product will be accompanied by a reduction in price on the tying product.  <u>Antitrust Law</u> ¶ 1769c at 413.  Comparing the value of only the tied product bundled and unbundled would not, therefore, give an accurate account of whether the buyer in fact sustained economic harm. <u>Id.</u>; <u>see also</u> <u>Kypta</u>, 671 F.2d at 1285.  Indeed, Areeda's opinion on the error of the tied product approach is blunt; he states that those courts that have measured damages based on an overcharge for the tied product alone are "quite wrong."  <u>Antitrust Law</u> ¶ 1769c at 413.  Holding that "injury resulting from a tie-in must be shown by establishing that payments for both the tied and tying products exceeded their combined fair market value," <u>Kypta</u>, 671 F.2d at 1285, the Eleventh Circuit Court of Appeals reasoned:

> A determination of the value of the tied products alone would not indicate whether the plaintiff indeed suffered any net economic harm, since a lower price might conceivably have been exacted by the franchisor for the tying product. Unless the fair market value of both the tied and tying products are determined and an overcharge in the complete price found, no injury can be claimed; suit, then, would be foreclosed.

---

[7] The Courts of Appeals of the Fifth, Seventh, Ninth and Eleventh Circuits have defined antitrust injury according to the package approach.  <u>United Farmers Agents Ass'n v. Farmers Ins. Exch.</u>, 89 F.3d 233, 237 (5th Cir. 1996); <u>Will v. Comprehensive Accounting Corp.</u>, 776 F.2d 665, 672-73 (7th Cir. 1985); <u>Siegel v. Chicken Delight, Inc.</u>, 448 F.2d 43, 52 (9th Cir.), <u>cert. denied</u>, 405 U.S. 955 (1972); <u>Midwestern Waffles, Inc. v. Waffle House, Inc.</u>, 734 F2d 705 718-19 (11th Cir. 1984); <u>see also</u> <u>L. Knife & Son, Inc. v. Banfi Prod. Corp.</u>, 118 F.R.D. 269, 271 (D.Mass. 1987) (applying package approach to calculation of damages in ruling on discovery dispute); <u>Freeland v. AT&T Corp.</u>, 238 F.R.D. 130, 149-50 (S.D.N.Y. 2006) (applying package approach to identify antitrust injury-in-fact in denying motion for class certification).

Id.  Indeed, the alternative approach to tying damages not only fails to capture the incidence of economic harm but may also have the unintended result of going beyond making the plaintiff whole and placing it in a better position than it would have been in absent the allegedly unlawful antitrust activity.  In a case decided after Visa Check, the District Court for the Southern District of New York rejected the tied product approach, reasoning that such a measure of damages could result in a windfall to the plaintiff because it fails to take into account whether any increase in the price of the tied product was offset or even exceeded by a reduction in the price of the tying product.  Freeland, 238 F.R.D. at 150 (citing Visa Check, 280 F.3d at 155 (Jacobs, J., dissenting)).

Because SMW has not pled Amgen's tying arrangement has caused it to face a significant threat of paying more for Aranesp and WBCGF as a bundle than it would pay for the products individually absent the tie, SMW has failed to allege injury that may be redressed by its federal antitrust claims.  That the package approach to identifying whether antitrust injury has been sustained is the correct view is not merely theoretical in this case.  The facts alleged bear out the rationale for the package measure of damages.  SMW alleges that the Amgen products were tied by a pricing scheme that made discounts on the tying product, Amgen's WBCGF, available only on the condition that an oncology clinic purchase certain volumes of the tied product, Aranesp. The relevant fact of injury must be the amount paid for the bundle, not merely for the Aranesp alone.  The very nature of the tie at issue revolves around the tied goods' price interdependence, which is the underpinning of the package approach.

No relief may be granted under the Clayton Act because SMW has failed to plead an

injury cognizable under the federal statute. "While the amount of damages need not be precise, the fact of damage, consisting of net economic loss suffered by the plaintiff, . . . [is] the gravamen of a tie-in action." Kypta, 671 F.2d at 1285 (citing Areeda, 89 Harv. L. Rev. at 1127-28). Without making a plausible allegation of threatened antitrust injury, SMW lacks statutory standing to seek an injunction under the Clayton Act against Amgen's allegedly unlawful tying and monopolization. Dismissal of SMW's Clayton Act claim is warranted under 12(b)(6).[8]

The Court notes that it will order a dismissal without prejudice. SMW should and will be given the opportunity to re-plead its claim for relief under the Clayton Act alleging it has faced a significant threat of injury-in-fact as discussed by this Opinion.

**B.    Request For Declaratory Judgment**

Count One of the Complaint also pleads for this Court to issue declaratory judgment that Amgen's conduct, as described in the Complaint, violates Section 2 of the Sherman Act. SMW

---

[8] Amgen correctly points out that injury-in-fact is also a requirement of Article III standing under the United States Constitution, and its absence would deprive this Court of subject matter jurisdiction. The Court, however, notes that its determination that SMW lacks statutory standing to pursue a claim for injunctive relief under the Clayton Act does not deprive this Court of subject matter jurisdiction over the entire action, which is also properly before this Court by virtue of class action diversity jurisdiction. See 28 U.S.C. 1332(d). The Complaint asserts claims under the antitrust statutes of 28 different states, and the matter of statutory standing under those statutes has not been briefed. Based on the papers submitted on this motion, it is not clear to this Court whether those various jurisdictions would define antitrust injury in the same way federal law does, in particular because the federal jurisprudence on what constitutes antitrust injury in a tying arrangement is not settled. Moreover, as discussed in Section IV.A, class certification must be decided before the Court reaches the question of SMW's Article III standing with regard to the state claims. The Court finds that it would be premature to make a determination on SMW's standing to pursue various state antitrust claims based on lack of injury-in-fact, particularly where the parties have not had the opportunity to brief the law of each state adequately.

claims that through the allegedly illegal tying arrangement, Amgen has monopolized or attempted to monopolize the oncology clinic market for RBCGF. The declaratory judgment claim will also be dismissed for failure to state a claim upon which relief may be granted.

The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The express language of the declaratory judgment statute and fundamental principles of standing under Article III of the Constitution limit this power to actions which present a case or controversy. Cutaiar v. Marshall, 590 F.2d 523, 527 (3d Cir. 1979). "The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." Id. The Supreme Court has held that the question of whether declaratory judgment is appropriate is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S. 103, 108 (1969) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Because SMW seeks a declaration that Amgen has violated Section 2 of the Sherman Act, deciding whether SMW's claim for a declaratory judgment can survive this motion to dismiss requires an evaluation of whether the Complaint states a justiciable controversy involving that antitrust violation.

Section 2 of the Sherman Act encompasses three separate offenses: monopolization, attempt to monopolize and conspiracy to monopolize. 15 U.S.C. § 2; Carlo C. Gelardi Corp. v. Miller Brewing Co., 421 F.Supp. 237, 244 (D.N.J. 1976). It is a penal provision, providing that

any person who has committed one of the three listed acts "shall be deemed guilty of a felony." 15 U.S.C. § 2.  A private litigant's right to assert a civil suit for a violation of Section 2 of the Sherman Act is grounded in the Clayton Act.  <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 486 n. 10 (1977); <u>Handicomp, Inc. v. United States Golf Ass'n.</u>, No. 99-5372, 2000 WL 426245, at *2 n.2 (3d Cir. Mar. 22, 2000), <u>cert. denied</u>, 531 U.S. 928 (2000).  The Clayton Act, as discussed, requires that the plaintiff have sustained an antitrust injury as a matter of standing.  <u>Atlantic Richfield Co.</u>, 495 U.S. at 334.  For the reasons set forth in Section III.A., the Court has found that SMW has failed to plead injury-in-fact.

A justiciable case or controversy requires the existence of injury-in-fact.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  A failure to plead injury-in-fact therefore leaves SMW's claim for a declaratory judgment without a fundamental underpinning of that claim - an actual controversy between the parties.

Thus, Count One of the Complaint, requesting both injunctive relief under the Clayton Act and a declaratory judgment, will be dismissed without prejudice in its entirety.

**IV.    STATE ANTITRUST CLAIMS**

Amgen also seeks the dismissal Counts Two through Four of the Complaint.  Counts Two

and Three plead for relief under the laws of California, Amgen's principal place of business.[9]  In

the event the Court finds that California law would not apply to the nationwide class, Count Four

pleads for relief under the antitrust laws of 27 other jurisdictions as well.[10]  Amgen argues that

aside from being flawed for failing to plead injury-in-fact, the state antitrust claims also fail

because SMW has failed to allege that it made a reimbursement to an oncology clinic for the

Amgen products in each state under whose laws it seeks to recover and therefore lacks standing.

Amgen also argues, alternatively, that apart from this infirmity, the state antitrust claims fail to

state a claim upon which relief can be granted because (1) several of the states do not recognize

antitrust damages claims brought by indirect purchasers; (2) SMW's injury - assuming one were

pled - would be too remote to be cognizable in states whose antitrust statutes permit indirect

purchasers to recover damages; and (3) several of the states limit the applicability of their

---

[9] Count Three, for violation of California's unfair business practices statute, does not concern antitrust law, as do all other claims in the Complaint.  The Court's discussion of the legal sufficiency of the federal and state antitrust claims is not applicable to the claim asserted in Count Three.  The Court, however, will not deal with that claim in a separate section of this Opinion.  Though Amgen moves to dismiss the Complaint in its entirety, its argument regarding the insufficiency of the California unfair business practices claim appears only in a short footnote.  The Court is not in a position, based on this briefing, to make a well-informed decision on whether Count Three states a claim upon which relief may be granted.  Therefore, to the extent this motion seeks to seeks to dismiss Count Three, it will be denied without prejudice.

[10] These jurisdictions are: Alabama, Alaska, Arizona, District of Columbia, Florida, Hawaii, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin.

antitrust statute to conduct that is predominantly intrastate in scope.  The Court will address each of these arguments in turn.

### A.    Standing To Bring Claims Under Laws of States Where No Injury Claimed

Amgen argues that, even if the state antitrust claims were cognizable - and as discussed below, it maintains that they are not - SMW lacks standing to pursue them because it has not asserted that it reimbursed oncology clinics, i.e., sustained an alleged injury, in each of the states under the laws of which it seeks relief.  Amgen takes the position that this deficiency in the Complaint violates a basic principle of standing: the named plaintiffs must have been personally injured.  Lewis v. Casey, 518 U.S. 343, 347 (1996).

Assuming, arguendo, that the harm claimed in the Complaint is a cognizable antitrust injury, SMW alleges that it was injured, but it does not specify that it actually made reimbursements in each of the states whose antitrust law the Complaint invokes.  This omission presents a problem of standing.  "[T]he fact that 'a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' " Gratz v. Bollinger, 539 U.S. 244, 289 (2003) (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20 (1976)).   Amgen argues that where there is no allegation of antitrust injury having occurred in a particular state, the class action plaintiff lacks standing to pursue a claim under that state's laws and the claim must be dismissed.  See In re Terazosin Hydrochloride Antitrust Litig., 160 F.Supp.2d 1365, 1370-71 (S.D. Fla. 2002) (dismissing certain state law

antitrust claims on a Rule 12(b) motion because no named end-payer plaintiff alleged that it suffered antitrust injury in those states). In other words, Amgen takes the position that SMW cannot maintain a state antitrust claim on behalf of the putative class based on the assumption that, theoretically, some un-named member of the class reimbursed an oncology clinic for its Aranesp purchase in that state.

Amgen's argument for dismissal of the state law claims for lack of standing fails because it is premature. Although in Terasozin, the Southern District of Florida dismissed certain state law antitrust claims for lack of Article III standing before it decided whether the class should be certified, Supreme Court precedent on the correct order of addressing these issues is to the contrary. Granted, it is axiomatic that the existence of a justiciable case or controversy is a fundamental requirement for jurisdiction to attach under Article III of the Constitution. The Supreme Court, however, has held that where class certification is "logically antecedent to Article III concerns," class certification should be decided before reaching the question of Article III standing. Ortiz v. Fibreboard, 527 U.S. 815, 831 (1999). The Ortiz rule applies to this case. The issue of whether SMW, the class action plaintiff, could pursue various state law antitrust claims on behalf of the putative class would not exist but for the fact that SMW has filed these claims on behalf of a class. Id.; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612 (1997) (stating that "logically antecedent" issues are those that would not exist but for the certification). The question is not whether SMW itself has sustained personal injury; clearly, it has alleged that in reimbursing oncology clinics, it bore overcharges due to Amgen's tying arrangement. See In re Relafen Antitrust Litig., 221 F.R.D. 260, 268 (D. Mass. 2004) (noting

18

distinction between situations in which <u>Ortiz</u> rule applies because standing issues arise solely due to class certification and those in which Article III standing must be decided first because the putative representative's injury is in doubt) (citing <u>Rivera v. Wyeth-Ayerst Labs.</u>, 283 F.3d 315, 319 & n. 6 (5th Cir. 2002) and <u>Payton v. County of Kane</u>, 308 F.3d 673, 680-82 (7th Cir. 2002)). Instead, the question of Article III standing to bring each state antitrust claim arises precisely because SMW seeks to prosecute the state claims on behalf of a class, whose members would have suffered an injury in the states whose antitrust statutes are asserted in the Complaint.  If the Court decides that class certification is not warranted, then Amgen's challenge to SMW's ability to pursue certain state law claims may be moot.  <u>In re Hypodermic Prods. Antitrust Litig.</u>, No. 05-1602, 2007 U.S. Dist. LEXIS 47438, at *57 (D.N.J. June 29, 2007).  Thus, because class certification creates the jurisdictional issue, the Court must treat the statutory standing issue before it deals with Article III standing, as instructed by <u>Ortiz</u>.  <u>Ortiz</u>, 527 U.S. 815 at 831; <u>In re Hypodermic Prods. Antitrust Litig.</u>, 2007 U.S. Dist. LEXIS 47438, at *57-58.

Amgen's motion to dismiss the state antitrust claims pertaining to the indirect purchaser states (that is, all the state claims except those asserted under the antitrust statutes of Florida, Louisiana, Massachusetts and New Jersey) for lack of jurisdiction, based on the absence of a justiciable controversy, will be denied without prejudice as premature.

### B.  Whether State Law Antitrust Claims State A Claim Upon Which Relief May Be Granted

#### 1.  States That Do Not Recognize Damages Claims By Indirect Purchasers

SMW does not allege that it is a direct purchaser of Amgen's RBCGF and WBCGF products.  It describes itself and the class members it claims to represent as a third-party payers,

which reimburse oncology clinics for their purchases from Amgen.  Under federal antitrust law,

only a direct purchaser may bring a claim for damages sustained as a result of an antitrust

violation.  Ill. Brick Co. v. Illinois, 431 U.S. 720, 728-29 (1977).  Though SMW does not assert a

claim for damages under the Clayton Act, the Complaint does plead for monetary relief for the

state antitrust law violations it claims Amgen committed.  The Court references the federal law

on standing as a backdrop to Amgen's arguments about SMW's standing to pursue state law

antitrust claims.

Florida, Massachusetts and New Jersey follow the Illinois Brick rule.  Mack v. Bristol-

Myers Squibb Co., 673 So.2d 100, 103 (Fla. Dist. Ct. App. 1996); Ciardi v. Hoffmann-LaRoche,

Ltd., 436 Mass. 53, 58 (2002); Wilson v. Gen. Motors Corp., 190 N.J. 336, 339 (2007).  The law

is in those states that an indirect purchaser cannot sue for damages under their antitrust statutes.

SMW's argument that Florida and Massachusetts courts have held that indirect purchasers do

have standing to sue under their states' consumer protection statutes is inapposite, because SMW

has not pled claims under those statutes.  With respect to relief under the New Jersey statute,

SMW argues that injunctive relief may be available; however, the Court does not read the

Complaint to make a demand for this remedy.[11]

The Complaint's claims under the antitrust statutes of Florida, Massachusetts and New

Jersey will therefore be dismissed.  Neither SMW, an indirect purchaser, nor the putative class of

_____

[11] The Complaint does not expressly request injunctive relief under the state statutes.
Following an assertion that Amgen's conduct has violated the statutes, the Complaint state its
"Prayer for Relief," asking for "damages . . . and such other relief as this Court may deem just
and proper."

other third-party payers it purports to represent, can obtain the relief sought under those statutes. SMW will be given leave to amend the Complaint, however, to assert claims presently absent from the pleading.  The Court makes no determination at this time whether those claims would be viable or survive subsequent motions to dismiss.

Amgen also moves for dismissal of the claim under Louisiana's antitrust statute. Louisiana courts have not settled the question of whether, in applying Louisiana's antitrust statute, they would follow Illinois Brick or, instead, recognize the standing of indirect purchasers to sue for damages.  Free v. Abbott Labs., 176 F.3d 298, 299 (5th Cir. 1999), aff'd, 529 U.S. 333 (2000).  The Fifth Circuit Court of Appeals, however, predicted that Louisiana would follow the Illinois Brick rule.  Affirming the district court's dismissal of the indirect purchaser plaintiffs' state antitrust claims, the Fifth Circuit held "[i]n our best judgment, the Louisiana courts would follow the federal indirect purchaser rule and deny standing to the appellants." Id.  Guided by the Fifth Circuit's prediction in Free, this Court holds that SMW's claim under Louisiana's antitrust statute must be dismissed for failure to state a claim under which SMW, or any other indirect purchaser, may obtain monetary relief.

2.     States That Permit Indirect Purchaser Recovery of Damages

According to Amgen's brief, the remainder of the state jurisdictions invoked in the Complaint do recognize antitrust damages claims made by indirect purchasers.  Amgen concedes that, in states with Illinois Brick repealer statutes, indirect purchasers may have standing to pursue antitrust damages claims but maintains that their ability to pursue such claims is limited by the remoteness of the injury. (States that do not follow the Illinois Brick rule will be referred

to as "indirect purchaser" states.)  It argues that any purported link between SMW's alleged injury - reimbursement of oncology clinic purchases of Aranesp - and Amgen's pricing scheme is too attenuated to confer standing on SMW.

Amgen relies on Associated General Contractors of California v. California State Council of Carpenters, 459 U.S. 519 (1983).  There the Supreme Court held that merely having suffered a cognizable antitrust injury would not necessarily entitle a party to maintain an antitrust suit.  Id. at 535.  It instructed that whether recovery may be had requires an evaluation of the relationship between the harm and the alleged wrongdoing, with reference to several factors.  Id. at 535-37.  One relevant factor is the directness or indirectness of the claimed injury.  Id. at 540.  Amgen takes the position that the amount at which SMW reimbursed oncology clinics was affected by too many intervening factors to have a sufficiently traceable or direct link to the alleged wrongdoing to be subject to antitrust remedy.

The Court need not, and will not, consider Amgen's recitation of the various facts surrounding how an oncology clinic purchases RBCGF and WBCGF, how reimbursement by end-payors may be determined and the various steps in between the bundled sale and payment by a third-party payor.  (See Def. Br. at 16-17.)  These facts, on which Amgen bases its remoteness argument, are not pled in the Complaint, making the remoteness argument wholly unsuited to a Rule 12 motion to dismiss.[12]  The Complaint makes allegations about how the government reimburses clinics for drugs administered to Medicare patients.  (Compl. ¶¶48-49.)  Amgen's

---

[12] Though urged by Amgen, the Court declines to take judicial notice of facts alleged by SMW in a lawsuit pending in California.

citation to these paragraphs does not yield the conclusion that the overcharges borne by SMW and the other end-payors it claims to represent are the product of a system of purchasing and reimbursement so complex that it defeats any standing SMW may have to seek antitrust damages in indirect purchaser states.

Instead, a construction of the facts of the Complaint in the light most favorable to SMW compels the opposite conclusion.  Caselaw dealing with indirect purchaser standing under the Clayton Act is instructive.  Under federal antitrust law, Illinois Brick does not bar indirect purchasers from obtaining injunctive relief.  In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 399-400 (3d Cir. 2000).   In Warfarin Sodium, the Court considered the question of standing by a class of consumers of Coumadin, the brand name of a blood-thinning drug prescribed for the prevention and treatment of blood clots, to sue for injunctive relief under section 16 of the Clayton Act.  Id. at 397.  The Court held that the district court had incorrectly cited and relied on facts outside the complaint in concluding that there was not a significant nexus between the alleged injury and the defendant's anti-competitive conduct.  Id. at 398.  These extrinsic facts included the existence of health insurance and third-party payor arrangements and their effect on whether the consumer class had in fact sustained any overcharge.  Id.  The Third Circuit held that the district court should have accepted as true what the complaint alleged – "that the class members paid inflated prices for Coumadin because DuPont [the defendant] thwarted the generic's market entry."  Id.  Analyzing the consumer class's antitrust standing based on that allegation, the Third Circuit held that the district court's refusal to recognize the consumers' standing was "contrary to our jurisprudence."  Id. at 401.  The Court rejected the defendant's

remoteness argument, reasoning:

> Regardless of the existence of various links of middlemen, if there were no ultimate consumer of Coumadin, prices charged for the drug by DuPont to distributors, pharmacies, etc., would be irrelevant.  The excess amount paid by Coumadin users not only is "inextricably intertwined" with the injury DuPont aimed to inflict, the overcharge was the aim of DuPont's preclusive conduct.  It is difficult to imagine a more formidable demonstration of antitrust injury.

Id.

Guided by this analysis, the Court holds that based on the facts pled in the Complaint, it appears that SMW's allegations of harm are not so remote from the complained-of wrongdoing that the claims under the indirect purchaser states' statutes must be dismissed.  Specifically, the Complaint avers: "Amgen's pricing schemes have caused and will continue to cause anti-competitive effects in the relevant product markets. . . . Amgen's coercive bundling programs have caused public and private health care insurers, including third-party payer members of the Class, to reimburse clinics for their Aranesp purchases at rates that are higher than would have prevailed in 'head to head' competition."  (Compl., ¶¶ 64-65.)  The Court recognizes that SMW identifies itself in the Complaint as a third-party payer.  This alone, however, does not necessarily imply that, due to different ways that a clinic may purchase and administer RBCGF drugs and WBCGF drugs, that a patient may pay the clinic for his particular mix of purchases and the various formula that may apply to reimbursements by third-party payors, SMW's injury is too remote from the pricing scheme to be cognizable.  These facts, argued by Amgen, are neither pled by the Complaint nor can they be inferred from the pleading.  Amgen's remoteness argument is, simply put, premature, and if at all, appropriate for consideration on a motion for

summary judgment.

Thus, Amgen's motion to dismiss the antitrust claims for recovery under the laws of the indirect purchaser states will be denied.

       3.     <u>States That Limit Antitrust Statutes To Predominantly Intrastate Conduct</u>

Amgen also challenges SMW's ability to proceed with its claims under the antitrust statutes of the states of Louisiana, Massachusetts, Michigan, Tennessee, West Virginia and Wisconsin on the grounds that the antitrust statutes of these states cannot provide relief for the wrongdoing alleged in the Complaint.  These states' antitrust laws, Amgen contends, apply only if the anti-competitive activity at issue occurred predominantly within the state.  SMW, however, complains of nationwide injuries on behalf of a putative nationwide class.  Amgen argues that the Complaint contains no "allegations of any conduct or injury in the states in question, much less predominantly intrastate conduct."  (Reply Br. at 14.)

The Court has reviewed the relevant provisions of the statutes of the above-mentioned states (with the exception of Louisiana and Massachusetts, because the Court has already determined that those claims must be dismissed as precluded by SMW's indirect purchaser status).  The antitrust statutes of Michigan, Tennessee, West Virginia and Wisconsin, are unquestionably directed toward intrastate commerce.  <u>See</u> <u>Peoples Savs. Bank v. Stoddard</u>, 102 N.W.2d 777, 796 (Mich. 1960) (holding state antitrust statute is not preempted by federal law and that a state has the authority to enforce its own antitrust statute where the effect of the anticompetitive conduct is primarily intrastate); <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 350 F.Supp.2d 160, 172 (D.Me. 2004) (holding that Tennessee Court of Appeals

rejected requirement that conduct "predominantly" affect intrastate commerce, instead

concluding that Tennessee's antitrust statute "applies to illegal conduct that *substantially* affects

commerce within this state") (quoting Sherwood v. Microsoft Corp., No.

M2000-01850-COA-R9CV, 2003 WL 21780975, at *21 (Tenn.Ct.App. 2003) (emphasis in

quotation); W.Va. Code § 37-18-3 ("[e]very contract, combination in the form of trust or

otherwise, or conspiracy in restraint of trade or commerce in this State [West Virginia] shall be

unlawful"); Meyers v. Bayer AG, 735 N.W.2d 448, 464 (Wis. 2007) (noting that Wisconsin

Supreme Court has held that state's antitrust statute applicable if "the conduct complained of

'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal

activity resulting in those impacts occurred predominantly or exclusively outside this state")

(citing Olstad v. Microsoft Corp., 700 N.W.2d 139, 158 (Wis. 2005)).  Amgen contends that the

claims under these state antitrust statutes must fail because these laws "apply only to conduct that

is predominantly interstate."  (Reply Br. at 14.)  The Court has not been presented with any

authority that states that relief under these laws is exclusive of any applicable federal relief for

the interstate reach of the activity.  See, e.g., In re Intel Corp. Microprocessor Antitrust Litig.,

496 F.Supp.2d 404, (D.Del. 2007) (denying motion to dismiss claim under West Virginia

antitrust statute in a nationwide class action suit also involving claims under federal law and

statutes of other states).  In other words, based on the minimal briefing on the subject, the Court

does not interpret the statutes to be inapplicable where the anticompetitive conduct may have

both interstate effects and, as concerns the particular state in question, intrastate impact.

Whether the factual allegations of the Complaint, which presently lacks any state-specific

allegations, may support a viable claim under these statutes is a separate question, and one which the Court will not address at this time.

Thus, Amgen's motion to dismiss the state antitrust claims under the laws of Michigan, Tennessee, West Virginia and Wisconsin will be denied without prejudice.

4.   Substantive Sufficiency of State Claims

Finally, in the interest of completeness, the Court notes that Amgen alternatively argues that even if the Court were to find that SMW has standing to pursue the antitrust claims pled in the Complaint, they must be dismissed for failure to state a claim upon which relief may be granted. The Court, of course, need not evaluate whether the Complaint avers facts on which tying and monopolization claims under the Sherman Act could be predicated. For the reasons discussed above, SMW's federal antitrust claims will be dismissed without prejudice for failure to plead injury-in-fact. Amgen, however, clarifies that, even though it relies primarily on federal caselaw regarding standing and the elements of tying and monopolization claims, its motion challenges the sufficiency of the state antitrust claims as well.

The Court will not reach the question of whether the surviving state antitrust claims, i.e., those relating to the indirect purchaser states, assert a claim upon which relief may be granted. The papers submitted by the parties on the instant motion provide only a cursory discussion of the substantive requirements of the state claims. The Court simply could not make an informed decision based on this briefing. The Court will entertain a separate motion to dispose of the state claims supported by adequate briefing.

**V.    CONCLUSION**

For the foregoing reasons, this Court will dismiss Plaintiff's federal claims, for relief under the Clayton Act and for a declaratory judgment, without prejudice. The Court will also dismiss Plaintiff's claims under the state antitrust laws of Massachusetts, Florida, Louisiana and New Jersey, because those states do not permit indirect purchasers to seek damages.  To the extent Amgen's motion seeks a dismissal of the other state antitrust claims pled in the Complaint, specifically those under the indirect purchaser states' antitrust statutes, the motion will be denied without prejudice.  Finally, with respect to the claim under California's Unfair Competition Law, the motion will be denied without prejudice.

Plaintiff will be given leave to amend the Complaint to cure the Complaint's deficiencies, consistent with this Opinion.  An appropriate form of order will be filed together with this Opinion.

   s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: August 12, 2008